I. Introduction
At the heart of this case is the question whether our statute[1] requiring assessment of a penalty against an unsuccessful appellant in this Court should be enforced in the federal courts under the Erie[2] doctrine.
In the case at bar, the United States District Court for the Southern District of Mississippi held that the penalty statute did not apply, even though the sole basis for federal subject matter jurisdiction was diversity of citizenship. 28 U.S.C. § 1332. That ruling has been appealed to the United States Court of Appeals for the Fifth Circuit which, invoking the procedures found in our Rule 46, has certified the question to us.[3] *Page 271 
This Court has construed Section 11-3-23 on many occasions.[4] Whether that statute should apply in a federal court diversity case, however, appears to be an open question, one which is ultimately a question of federal law turning upon the federal judiciary's construction of the Federal Rules of Decisions Act, 28 U.S.C. § 1652. We have accepted the certified questions and will attempt to shed such light on the subject as we can.
 II. Factual and Procedural History Leading to Rule 46 Certification
On February 26, 1971, Nevel A. Walters was working as a roughneck on a drilling rig engaged in drilling a well on premises leased by Inexco Oil Company in Clarke County, Mississippi. On that day, he sustained personal injuries in an explosion occurring on the premises.
On February 24, 1977, Walters and his wife, residents of this state, commenced this action against Inexco, a non-resident corporation, to recover damages for his personal injuries and her loss of consortium. Invoking diversity of citizenship jurisdiction, 28 U.S.C. § 1332, the Walters sued in the United States District Court for the Southern District of Mississippi, Hattiesburg Division. See 28 U.S.C. § 104(b)(5).
On May 2, 1979, District Court entered judgments in favor of the Walters for $534,116.54 and $50,000, plus interest, respectively. Walters v. Inexco Oil Company, 511 F. Supp. 21
(S.D.Miss. 1979). On November 5, 1980, the United States Court of Appeals for the Fifth Circuit affirmed, Walters v. Inexco OilCompany, 632 F.2d 891 (5th Cir. 1980), and thereafter denied rehearing, 642 F.2d 1210 (5th Cir. 1981). Inexco then filed in the Supreme Court of the United States a petition for writ of certiorari which has been denied. Inexco Oil Company v.Walters, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981).
On April 2, 1981, Inexco paid to the Walters the sum of $674,504.09. This sum represented payment in full of the judgments and interest. The instant question regarding the statutory penalty, however, was expressly reserved.
Back in the Court of Appeals, the Walters had filed a motion to assess statutory damages, pursuant to Section 11-3-23. They charged that they obtained judgments in the aggregate sum of $584,116.54 on May 2, 1979; that the judgments were affirmed on November 5, 1980; that they had been denied the use of the funds between May 2, 1979, and April 2, 1981, and that under Mississippi law, they are entitled to the damages, pursuant to Section 11-3-23, Miss. Code Ann., as amended. The Walters asserted further that such is the substantive law of the State of Mississippi, and cited a Fifth Circuit case, Proctor v.Gissendaner, 587 F.2d 182 (5th Cir. 1979), wherein a similar Alabama statute had been held to constitute a substantive rule that governed in diversity cases.
On March 19, 1981, the Court of Appeals referred that motion to the District Court which denied it. The District Court reasoned that Section 11-3-23 applied only to appeals to the Supreme Court of Mississippi and could not be construed to be general in nature. The District Court felt that there was a clear distinction between the Alabama statute under consideration in the Proctor case, for it referred to the "appellate court", while the Mississippi statute, Section 11-3-23, prescribes a penalty to be assessed only by the "supreme court".
The Walters perfected an appeal from the District Court's denial of statutory damages, thus bringing the case back to the United States Court of Appeals for the Fifth Circuit. The Court of Appeals determined to invoke the procedures and authority found in our Rule 46. Following an opinion reported as Waltersv. Inexco Oil Company, 670 F.2d 476 (5th Cir. 1982), the Court of Appeals has certified to this Court two questions set forth below. *Page 272 
 III. The Questions Certified 1. Does Section 11-3-23, Mississippi Code Annotated, apply only to appeals to the Supreme Court of Mississippi from another court in the state system; or, is Section 11-3-23, MississippiCode Annotated, general in nature so as to establish a "substantive" rule of damages, which a federal court, sitting in diversity, must apply?
2. If the answer to the above question is in the affirmative, does the amended Section 11-3-23, which substitutes 15% for the 5% figure, apply, or does the 5% figure apply?
 IV. Our Response And Its Context A. The Inartful Questions
In the present context we accept it as our responsibility to provide the Court of Appeals with such information about our statutory penalty rule as will best assist that Court in resolving the issue before it. The success and usefulness of our efforts depend upon our understanding just what information the Court of Appeals needs. With deference that Court has not worded the primary question — Question No. 1 — as artfully as it might.
In Question No. 1, we are asked whether Section 11-3-23 is ". . . general in nature. . . ." — as though we or any other group of judicial linguists could provide a meaningful answer to such a vague question, and as though something turns on the answer.
The question then asks whether the statute is ". . . general in nature so as to establish a `substantive' rule of damages. . . ." Implicit, of course, is the wholly dubious notion that a statute "general in nature" (whatever that means) is automatically "substantive".[5]
The final step in the question's syllogism is ". . . which a federal court, sitting in diversity, must apply." In short, the Court of Appeals in Question No. 1, reasons that if the statute is general, it is substantive, and if it is substantive the federal court must apply it.
Experience suggests that "generality" and "substance", like beauty, are in the eye of the beholder.[6] We, therefore, take the Court of Appeals at its word when it makes clear that we are not to consider ourselves limited by the phrasing of the certified questions. Walters v. Inexco Oil Company, 670 F.2d at 478 fn. 7.
 B. The Erie Doctrine Considered
It has been commonly supposed that under the familiar Erie
doctrine the federal courts, when exercising diversity of citizenship jurisdiction, apply state substantive law and federal procedural law. This, of course, is not so much what was said inErie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) as it is the subsequent mythology.
We understand the Erie doctrine to hold that the courts of the United States are required by the Federal Rules of Decisions Act, 28 U.S.C. § 1652, to enforce what has been loosely (and, in our view, often misleadingly) referred to as state substantive law. This law is not enforced because of any power the state may have to enact a statute enforcement of which is obligatory upon the federal courts. Erie ultimately construes a federal statute. Erie Railroad Co. v. Tompkins, supra, Reed, J., concurring, 304 U.S. at 90-92, 58 S.Ct. at 827-828, 82 L.Ed. at 1201-1202. It holds in effect that the Congress has declared in the Rules of Decisions Act that state law applies in certain cases tried in federal courts.[7] *Page 273 
But the Erie doctrine does not include and encompass all state laws arguably substantive. Even though there may be an outcome determinative conflict between state and federal law, there has been a clear recognition that there are many instances in which a federal rule must prevail even in diversity cases. This is so even though there be present unmistakably important state interests underlying the rejected state rule.
In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court enforced the federal rule regarding service of process on an executor, even though enforcement of the conflicting Massachusetts rule would have produced a different result in the lawsuit. In Boeing Co. v. Shipman, 411 F.2d 365
(5th Cir. 1969), the Court of Appeals held that a federal test applies when a jury verdict is challenged on a motion for judgment notwithstanding the verdict. Szantay v. Beech AircraftCorp., 349 F.2d 60 (4th Cir. 1965) held that South Carolina's "door closing" statute would not be enforced against non-Carolina litigants in a diversity case, even though the South Carolina state courts clearly would have enforced it. In Stovall v. PriceWaterhouse Co., 652 F.2d 537, 540-541 (5th Cir. 1981) the Court of Appeals applied a federal rule of collateral estoppel to a diversity case arising out of Mississippi, even though the state rule was substantially different.
Just how the courts of the United States decide whether a particular state rule should be enforced seems to become more obscure with each case. Guaranty Trust Co. v. York,326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), suggested a mechanical outcome determinative test. Mechanics produced arbitrary results, so Byrd v. Blue Ridge Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), adopted a balancing of interests test — the state's interests in the enforcement of its laws weighed against any federal interest implicated by the particular question presented, all considered against the backdrop of everyone's interest in the equitable administration of the laws and avoidance of unseemly forum shopping. In Hanna v. Plumer,supra, the pendulum swung back to the middle, toward a somewhat more mechanical test, at least in cases where the federal rule at issue was within the Supreme Court's rule making power. 28 U.S.C. § 2072.
Precisely what the Erie rule means today we do not pretend to know.[8] The blunt substantive — procedural distinction has proved unsatisfactory in all except the simplest of cases.[9]
What is clear, however, is *Page 274 
that the question whether the Mississippi penalty statute shouldbe applied in this case is a pure Erie question. It is theErie doctrine which provides the clues as to what the questions are, to what information the Court of Appeals needs. Having in mind notions of some sort of golden rule for the federal system of which we are a part, we will answer as best we can.
 C. Answer to Certified Question No. 1
We have no legislative history available as a guide to the interpretation of Mississippi's mandatory penalty statute, today codified in Miss. Code Ann. § 11-3-23 (Supp. 1982). We are, nevertheless, quite familiar with the statute, having construed and applied it many times over the years.
The statute applies to a variety of kinds of final judgments or decrees. Clearly a judgment for a sum of money such as we have here is within the statute. It applies to all final judgments of the types specified by the statute which are affirmed unconditionally by this Court. And, by virtue of Miss. Code Ann. § 11-51-79 (Supp. 1982), the statutory penalty shall be assessed in appeals taken to our circuit courts by our county courts.Excel Saw and Tool Co. v. Micor Corp., 265 So.2d 926 (Miss. 1972); Johnson Limited, Inc. v. Signa, 410 So.2d 1320 (Miss. 1982).
The penalty statute has been on our statute books at least since 1857. Miss.Rev. Code, ch. 63, art. 12 (1857). When it enacted the statute originally, we are confident the Mississippi Legislature had in mind only appeals to the Supreme Court of Mississippi. And, when the amount of the penalty was increased from 5% to 15% [Miss. Laws (1980) ch. 533, § 1] we are likewise confident that the legislature contemplated only state appeals. For this state has no constitutional power to prescribe that a penalty be assessed, or the manner of computation of such a penalty, for cases pending in courts other than the courts of the State of Mississippi.
The penalty statute expresses the state's interest in discouraging frivolous appeals. It likewise expresses a bona fide interest in providing a measure of compensation for the successful appellee, compensation *Page 275 
for his having endured the slings and arrows of successful appellate litigation.
Section 11-3-23 has application only where the appellant, as the unsuccessful litigant in the trial court, may by law take an appeal as of right. Appeals of interlocutory judgments or decrees are not subject to the penalty. Canal Bank and Trust Co. v.Brewer, 147 Miss. 885, 992-923, 114 So. 127, 128 (1927). This state makes no effort to limit the right of appeal, e.g., to cases where appellant proceeds in good faith, where there is probable cause to believe that the lower court has erred, and the like. The application of such threshold tests invariably leads to arbitrary and not infrequently unjust determinations of who may appeal and who may not. The fate of many appeals is necessarily determined summarily and without full briefing or argument.
As unworkable as these quasi-subjective tests are, an unfettered automatic right of appeal brings its own evils. Unsuccessful defendants will take meritless appeals because they are made, to subject their adversaries to more costs and expense, to squeeze a favorable settlement out of an impecunious plaintiff, and for less laudable reasons.
In this setting Mississippi has opted for the mandatory penalty rule. Every losing litigant is given an automatic right of appeal. When deciding whether to exercise that right, the penalty statute is there for him to consider. If he is successful on his appeal, of course, he incurs no penalty. If he loses, however, he must pay the price, a price he well knows and may easily calculate before giving his notice of appeal.[10]
We note that the Walters assert as a basis for their claim of the penalty that "they had been denied the use of the funds" since the date of the U.S. District Court's judgment. This premise is faulty. The purposes of our penalty statute and the policies it has been designed to promote do not include consideration of "mere delay" experienced by the plaintiff in getting his money. That is taken care of by our rules providing that all judgments shall bear interest at the legal rate from date of rendition.[11] Miss. Code Ann. § 75-17-7 (Supp. 1982). Still we can hardly be oblivious to the fact that in the past decade, an aggregate of prevailing market interest rates and the annual inflation rate has greatly exceeded the eight percent per annum legal rate of interest.
The penalty statute has further importance in the present state of this Court's caseload. It protects this Court from being required to spend its time and energy and resources on appeals thoughtlessly taken. Similarly, it tells the litigants that the trial itself is a momentous event, the centerpiece of the litigation, not just a first step weighing station en route to endless rehearings and reconsiderations. It is designed to deter litigants in our trial courts from trying their cases "with one eye on the Supreme Court". It is designed to assure that the cases brought to this Court are only those in which bona fide, substantial claims of legal error are found.
In conclusion, we state unequivocally that if this case had been in our state judicial system, the penalty statute would have applied and the penalty would have been assessed against Inexco. To be specific, *Page 276 
(a) if the judgments rendered May 2, 1979, [see Walters v.Inexco Oil Co., 511 F. Supp. 21 (S.D.Miss. 1979)] had been rendered by any circuit court in this state [the facts suggesting that venue may well have been proper in the Circuit Court of Clarke County, Mississippi]; and
(b) if the appeal in fact taken in this case to the United States Court of Appeals for the Fifth Circuit had been taken to this Court; and
(c) if, as did the Court of Appeals [Walters v. Inexco OilCo., 632 F.2d 891 (5th Cir. 1980)], we had unconditionally affirmed,
then, upon proper and timely motion, we would under the authority of Section 11-3-23 have assessed the penalty on each judgment and against Inexco.
We would have done this because the literal language of the penalty statute so required. En route we would have recognized that such action vindicated the purposes and policies undergirding and embodied in the statute.
 2.
There is one consideration present here which we would have had no occasion to consider had these cases been brought in the courts of this state. We refer to the forum shopping evil. By forum shopping we refer to the situation where an action would lie within the subject matter jurisdiction of both federal and state trial court and where there may be differences in the law applied in each court which may affect the plaintiff's decision where to file — and which may produce differing final results, depending upon which court is selected. We know, of course, that forum shopping can never be completely eliminated. Still we have always understood it to be one of the goals of Erie to hold forum shopping to a minimum.
If the penalty statute is not enforced in this case by the Court of Appeals, in our view there will have been created the precise sort of inequitable administration of the laws Erie was designed to eliminate.
In our view, the United States District Court for the Southern District of Mississippi and the Circuit Court of Clarke County are equivalent. This action could have been brought originally in either. In the present context, the United States Court of Appeals for the Fifth Circuit and this Court occupy equivalent positions — we are the appellate courts charged to hear direct appeals as of right. As indicated above, we would have applied and enforced the penalty statute. In this setting we assert just as bona fide and substantial an interest in the correct application of Erie as may the federal judiciary. In our view, — if we may be so presumptuous as to give an advisory opinion on a question of federal law — the failure of the Court of Appeals to apply the penalty statute would (a) be an incorrect decision under the Erie doctrine and would (b) violate this State's interest in the avoidance of forum shopping and the discriminatory administration of the laws.[12]
The manner in which the courts of the United States assess interest on judgments presents an important analogy. By statute,28 U.S.C. § 1961,
 Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of *Page 277 
the judgment, at the rate allowed by state law.
[Emphasis added].
Pursuant to Section 1961,[13] Mississippi's interest-on-judgments statute, Miss. Code Ann. § 75-17-7 (Supp. 1982) has regularly been enforced by the federal courts sitting in this state.[14] See, e.g., Ayers v. Western LineConsolidated School District, 404 F. Supp. 1225, 1227-1228 (N.D.Miss. 1975); rev'd on other grounds, 555 F.2d 1309 (5th Cir. 1977); vacated in part on other grounds 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); Illinois Central Gulf RailroadCompany v. Golden Triangle Wholesale Gas Company, 423 F. Supp. 679, 684 (N.D.Miss. 1976); Howard v. University of SouthernMississippi, 30 F.E.P. Cases 1614 (S.D.Miss. 1980); Griffin v.Tunica County Schools, 95 CCH Lab.Cas. 13, 844, 112 L.R.R.M. 2167 (N.D.Miss. 1982).
We suggest there is no principled basis on which the federal courts may enforce our interest on judgments statute and at the same time decline to enforce our unsuccessful appeal penalty statute.
 D. Answer to Certified Question No. 2
The second question certified asks that we advise the Court of Appeals whether amended Section 11-3-23, which substitutes 15% for 5%, applies in this case. This question is as simple as the first is complex.
Miss. Code Ann. § 11-3-23 was amended in 1980. Chapter 533 of the Laws of 1980, effective from and after July 1, 1980, increases the percentage amount of the statutory damages from 5% to 15%. Section 2 of Chapter 533 provides as follows:
 The additional damages provided in Section 1 of this Act shall apply only to judgments and decrees filed with the clerk of the court on or after the effective date of this Act.
As posed by the briefs, the issue here is whether the date of the original District Court judgment, May 2, 1979, or the date of the affirmance in the Court of Appeals, November 5, 1980, is the operative date. Obviously, the District Court judgment was entered prior to July 1, 1980, while the Court of Appeals' judgment was entered subsequent to July 1, 1980. If the District Court's judgment controls, any statutory damage award should be computed on the basis of 5% of the damages awarded, while if the Court of Appeals' judgment controls, the amended 15% statutory damage provision will apply.
As is so often the case, the solution to this puzzle of statutory construction comes from a consideration of the purposes of the statute. We find that the primary purpose of the statute here is to prevent and deter frivolous appeals. In the face of the rule that an unsuccessful litigant is entitled as of right to appeal the decision of a trial court to this Court, the legislature determined that some provision should be made to curb abuses of that right. That provision was the statutory penalty.
Seen in this light, we must look at the matter from the vantage point of the prospective appellant immediately after the rendition of the original judgment in the trial court. The provisions of Section 11-3-23 are a part of his decision making process at that time, for it is only at that time that any deterent effect of the statute logically may operate.
Considerations of fairness also compel this conclusion. The damages statute is highly penal in nature, as has been stated by this Court on a number of occasions. See, e.g., McKendrick v.Lyle Cashion Company, 234 Miss. 325, 340, 106 So.2d 509, 511 (1958); Entrican v. King, 289 So.2d 913, 914 (Miss. 1974);Lowicki v. Lowicki, 429 So.2d 917, 919 (Miss. 1983). It would be grossly unfair to increase the penalty after the *Page 278 
appellant has perfected his appeal and set the appellate process in motion. In a very real sense, this would be the same as tripling the fine imposed upon conviction for a criminal offense and then applying that tripled fine to persons whose offenses were committed prior to the effective date of the act.
We have considered this question in Deas v. Andrews,411 So.2d 1286, 1294 (Miss. 1982). In the Deas case, the trial court judgment was entered May 2, 1980, almost two months before the effective date of Chapter 533, Laws of 1980. The judgment of this Court affirming on the merits was entered March 31, 1982, well after the July 1, 1980, effective date. In the context of considering the precise legal question here presented, we said inDeas
 This Court fines and adjudges that, under the said terms of amended statute, the amendment increasing the amount of damages does not, under its terms, apply to the judgment in the present case which was entered and filed with the clerk of said Circuit Court of Harrison County on May 2, 1980. 411 So.2d at 1294.
The Court then sustained the motion to assess statutory damages at the rate of 5%, applying the statute as it was in effect on May 2, 1980, the date of the trial court's judgment.
The answer to Certified Question No. 2 is that the five percent (5%) penalty applies to both judgments as entered on May 2, 1979.
CERTIFIED QUESTIONS ANSWERED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
[1] Prior to July 1, 1980, Miss. Code Ann. § 11-3-23, in pertinent part, read as follows:
 In case the judgment or decree of the court below be affirmed, . . ., the Supreme Court shall render judgment against the appellant for damages, at the rate of five percent (5%), as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum. . . .
Effective July 1, 1980, the five percent (5%) penalty provided in the statute was increased to fifteen percent (15%). Miss. Laws of 1980, ch. 533, § 1.
[2] Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[3] Our Rule 46, effective August 1, 1980, provides as follows:
 When it appears to the Supreme Court of the United States, or to any circuit court of appeals of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Mississippi for rendition of a judgment or opinion concerning such questions or propositions of Mississippi law. This Court may, in its discretion, decline to answer the questions certified to it.
[4] For a useful discussion of the statute, see Comment,Mandatory Assessment of Damages Against Unsuccessful Appellant:A Constitutional Analysis, 53 Miss.L.J. 281, 282-289 (1983).
[5] This Court has many rules just as "general" as Section11-3-23, i.e., each applies to all appeals to this Court, which most would hold clearly "procedural": Our rules requiring assignments of error by the appellant, taxing costs against the losing party, etc.
[6] Almost 40 years ago at a time when Erie had been on the books for less than a decade the inadequacies of the substance-procedure dichotomy had become apparent. See Justice Frankfurter's discussion in Guaranty Trust Co. v. York,326 U.S. 99, 108-110, 65 S.Ct. 1464, 1469-1470, 89 L.Ed. 2079, 2085-2087 (1945). See footnote 9, infra.
[7] We are very much aware, of course, that the question presented here is by no means limited to those cases heard in courts of the United States where the basis for subject matter jurisdiction is diversity of citizenship under 28 U.S.C. § 1332. Nothing in the Rules of Decisions Act limits its application to diversity cases. We assume that this question will arise whenever a claim is heard in a court of the United States where the merits are in substantial part determined by reference to the laws of the State of Mississippi. This would include not only diversity cases but also cases where pendent state claims are heard and adjudicated in the courts of the United States. See, e.g.,Roberts v. Williams, 456 F.2d 819, 832 (5th Cir. 1972).
[8] Useful discussions of the contours and parameters of "theErie Doctrine" appear in Ely, The Irrepressible Myth of Erie,
87 Harv.L.Rev. 693 (1974) and Redish, et al., Erie and The Rulesof Decision Act: In Search of an Appropriate Dilemma, 91 Harv.L.Rev. 356 (1977).
[9] Guaranty Trust is no longer the controlling formulation of the Erie doctrine, as we have noted above. Still Justice Frankfurter's opinion in that case is the best articulation we have of why we should be leery of analyzing these cases in simplistic "substance vs. procedure" terms.
 Matters of "substance" and matters of "procedure" are much talked about in the books as though they defined a great divide cutting across the whole domain of law. But, of course, "substance" and "procedure" are the same key-words to very different problems. Neither "substance" nor "procedure" represents the same invariants. Each implies different variables depending upon the particular problem for which it is used. See Homes Ins. Co. v. Dick, 281 U.S. 397, 409, 74 L.Ed. 926, 934, 50 S.Ct. 338 [341] 74 A.L.R. 701. And the different problems are only distantly related at best, for the terms are in common use in connection with situations turning on such different considerations as those that are relevant to questions pertaining to ex post facto legislation, the impairment of the obligations of contract, the enforcement of federal rights in the State courts and the multitudinous phases of the conflict of laws. [Citations omitted].
 * * * * * *
 And so the question is not whether a statute of limitations is deemed a matter of "procedure" in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?
 It is therefore immaterial whether statutes of limitation are characterized either as "substantive" or "procedural" in State court opinions in any use of those terms unrelated to the specific issue before us. Erie R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of the litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court block away should not lead to a substantially different result. And so, putting to one side abstractions regarding "substance" and "procedure", we have held that in diversity cases the federal courts must follow the law of the State as to burden of proof, Cities Serv. Oil Co. v. Dunlap, 308 U.S. 208, 84 L.Ed. 196, 60 S.Ct. 201, as to conflict of laws, Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 85 L.Ed. 1477, 61 S.Ct. 1020, as to contributory negligence, Palmer v. Hoffman, 318 U.S. 109, 117, 87 L.Ed. 645, 651, 63 S.Ct. 477 [482], 144 A.L.R. 719. And see Sampson v. Channell, 110 F.2d 754. Erie R. Co. v. Tompkins
has been applied with an eye alert to essentials in avoiding disregard of State law in diversity cases in the federal courts. A policy so important to our federalism must be kept free from entanglements with analytical or terminological niceties.
 326 U.S. at 108-110 [58 S.Ct. at 1469-1470] 89 L.Ed. at 2085-2087.
[10] We have repeatedly stated that, when a case fits within a fair reading of the statute, assessment of the penalty is mandatory, not discretionary. Chrismond v. Chrismond, 213 Miss. 189, 193, 56 So.2d 482, 484 (1952); Hart v. Catoe,393 So.2d 1346, 1347 (Miss. 1981); Lowicki v. Lowicki, 429 So.2d 917, 919 (Miss. 1983); Peoples Bank Trust Co. v. L T Developers,Inc., 437 So.2d 7, 9 (Miss. 1983). The penalty must be assessed even though the justness of so doing is not apparent. PeoplesBank Trust Co. v. L T Developers, Inc., supra, at footnote 3.
[11] Use of the penalty as compensation for delay is conceptually objectionable. The amount of the penalty is determined without reference to the amount of delay experienced by the appellee. The unsuccessful appellant must pay the specified percentage of the principal amount of the final judgment whether the delay experienced by appellee is one year or as here more than four years. Daily interest is a more apt means of compensating the appellee for delay and for having been deprived of the use of his money.
[12] We note that the Walters are citizens of Mississippi. We would normally be concerned that they enjoy all rights, privileges and immunities afforded other Mississippians — including rights secured by Section 11-3-23. If it had been important to them, the Walters could easily have brought their action in the Circuit Court of Clarke County. That way they would have been certain of enjoying the benefits of Section 11-3-23 in the event of an appeal. But the Walters voluntarily elected not to sue in the courts of this state. No doubt Plaintiffs' counsel carefully considered his alternatives and decided, on balance, that he would be better off in the federal courts. The judgments of $534,116.54 in favor of Nevel A. Walters and $50,000.00 in favor of Delphia Walters certainly seem to have vindicated Plaintiffs' choice of forum. In this context, however, it is hard to find much force in Plaintiffs' selfish claim that they ought also have the benefits of the penalty statute. As indicated above, our view that the Court of Appeals ought apply the statute rests on other grounds.
[13] If Section 1961 had never been enacted, we perceive that the Mississippi interest-on-judgments statute would likely be enforced in federal court under the general authority of the Rules of Decisions Act, 28 U.S.C. § 1652 and the Erie
doctrine.
[14] The judgments entered by the District Court in this case back on May 2, 1979, provide expressly for interest at the rate of eight percent per annum from date of judgment. Our Section75-17-7 is not mentioned, but this interest provision in the Walters' judgments obviously rests on it.