## WEBB v. WEBB

No. 79–6853.   Argued March 23, 1981—Decided May 18, 1981

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined.   POWELL, J., filed a concurring opinion, in which BRENNAN, J., joined, *post*, p. 502.   MARSHALL, J., filed an opinion dissenting in part, *post*, p. 502.

*Mary R. Carden* argued the cause for petitioner.   With her on the briefs were *Edward R. Zacker, Roy M. Sobelson,* and *John L. Cromartie, Jr.*

*Manley F. Brown,* by appointment of the Court, 449 U. S. 1008, argued the cause and filed a brief for respondent.*

JUSTICE WHITE delivered the opinion of the Court.

This case involves a custody dispute between the mother and father of a minor child.   Their dispute has reached this

---

*Briefs of *amici curiae* were filed by *Harry M. Fain* for the American Academy of Matrimonial Lawyers; by *Phyllis Gelman, Louise Gruner Gans,* and *Catherine P. Mitchell* for the National Center on Women and Family Law, Inc., et al.; and by *John C. Deacon* for the National Conference of Commissioners on Uniform State Laws.

Court because the state courts of Florida and Georgia have reached conflicting results in assigning custody of the child.

On March 8, 1979, petitioner, the mother, filed an action in Florida state court seeking custody of her son. On April 18, 1979, the Florida court entered a judgment granting her custody. On March 23, 1979, respondent, the father, filed an action in Georgia state court also seeking custody. On June 21, 1979, he was awarded custody by the Georgia court. The Georgia Supreme Court affirmed that decision. 245 Ga. 650, 266 S. E. 2d 463.

The mother then filed a petition for writ of certiorari in this Court, raising just one question: "Does Article IV, § 1 of the United States Constitution, demand that Georgia . . . give full faith and credit to a Florida decree rendered immediately prior to Georgia's acceptance of unqualified jurisdiction?" Petitioner alleged that she had properly raised this federal question in the Georgia courts. Respondent filed a brief in opposition to the petition for certiorari in which he argued that the Full Faith and Credit Clause must give way to the "best interests" of the child in a child custody proceeding.[1] At no point in his brief in opposition did respondent dispute petitioner's contention that the federal issue had been properly raised below, nor did respondent contend that there was some other jurisdictional bar that would prevent this Court from reaching the question raised in the petition.

Under our Rule 19.1, we no longer require, and in fact disfavor, the filing of the lower court record prior to action by this Court on a petition for certiorari. We are, therefore, largely dependent upon the assertions made by the parties as to what that record will demonstrate concerning the manner in which a federal question was raised below. Because petitioner forthrightly asserted that the federal question had

---

[1] Respondent also argued that the Georgia court properly assumed jurisdiction under the Uniform Child Custody Jurisdiction Act. This is purely a question of state law not properly subject to review in this Court.

been raised and this assertion was not disputed by respondent, we assumed that there would be no jurisdictional problem in reaching the issue raised by the petition, and we granted certiorari.[2]  449 U. S. 819.  It has become clear, however, that the federal question was not raised below and that we are without jurisdiction in this case.  We must therefore dismiss without reaching the merits.

Because this case comes to this Court from a state court, the relevant jurisdictional statute is 28 U. S. C. § 1257.  As applied to the circumstances of this case, that statute requires that in the state courts petitioner have "specially set up or claimed under the Constitution . . . of . . . the United States" that right which she now seeks to have this Court enforce.  28 U. S. C. § 1257 (3).  Similarly our Rule 21.1 (h) requires the petitioner to "specify the stage in the proceedings, both in the court of the first instance and in the appellate court, at which the federal questions sought to be reviewed were raised; the method or manner of raising them and the way in which they were passed upon by the court."  Our examination of the record convinces us that petitioner failed properly to raise or preserve a claim under the Full Faith and Credit Clause of the Federal Constitution in the Georgia courts.

We note first that nowhere in the opinion of the Georgia Supreme Court is any federal question mentioned, let alone expressly passed upon.  Nor is any federal issue mentioned by the dissenting opinion in that court.  This Court has frequently stated that when "the highest state court has failed to pass upon a federal question, it will be assumed that the omission was due to want of proper presentation in the state courts, unless the aggrieved party in this Court can affirmatively show the contrary."  *Street* v. *New York,* 394 U. S.

---

[2] Because—as will be discussed *infra*—the federal issue was not addressed by the Georgia Supreme Court, it may have been better practice on our part to call for the record before acting on the petition for certiorari.

576, 582 (1969); see also *Fuller* v. *Oregon,* 417 U. S. 40, 50, n. 11 (1974); *Chambers* v. *Mississippi,* 410 U. S. 284, 290, n. 3 (1973); *Bailey* v. *Anderson,* 326 U. S. 203, 206–207 (1945). Petitioner argues that the record of this case rebuts this assumption because it demonstrates that she did raise the federal question. Therefore, in her view the State Supreme Court must be understood as having implicitly rejected her federal claim.

Although petitioner did use the phrase "full faith and credit" at several points in the proceedings below, nowhere did she cite to the Federal Constitution or to any cases relying on the Full Faith and Credit Clause of the Federal Constitution. In her amended motion to dismiss in the Georgia trial court, petitioner added the following contention: "Plaintiff herein continues to act contrary to the order of the Superior Court of Berrine County, entered September 22, 1977, and also is acting in violation of the April 18, 1979, order of the circuit court of Alachua County, Florida . . . which order should be accorded full faith and credit by this court, as it was made pursuant to relevant Florida law, as stated above." Also, in petitioner's enumeration of errors to the Georgia Supreme Court, she stated that "the [c]ourt erred in failing to find a Florida decree of April 18, 1979, a valid order in a prior pending action, give such full faith and credit, enforce it by ordering Plaintiff to comply with it in all respects, and dismiss this action." [3]

It is a long-settled rule that the jurisdiction of this Court to re-examine the final judgment of a state court can arise only if the record as a whole shows either expressly or by clear implication that the federal claim was adequately pre-

---

[3] In petitioner's brief to the Georgia Supreme Court she devoted one sentence to this issue: "In such circumstances, Appellant asserts, the decree entered in Florida should have been recognized as a final order subject to full faith and credit." Brief for Respondent 3. This lower court brief is not a part of the record, but even if it were it would not suffice to establish that petitioner's claim was based on the Federal Constitution.

sented in the state system. *New York ex rel. Bryant* v. *Zimmerman*, 278 U. S. 63, 67 (1928); *Oxley Stave Co.* v. *Butler County*, 166 U. S. 648, 655 (1897). Petitioner argues that since the Georgia Constitution has no full faith and credit clause, there can be no doubt that the above references in the record were to the Federal Constitution and therefore that her federal claim was properly presented. See Tr. of Oral Arg. 4. We are unpersuaded. In fact, we find it far more likely that petitioner was referring to state law.

The Georgia Supreme Court understood this case to concern primarily the requirements of the Uniform Child Custody Jurisdiction Act: "This case calls for an interpretation of certain provisions of Georgia's Uniform Child Custody Jurisdiction Act, Code Ann. § 74–501, et seq." That Act has been adopted by both Georgia and Florida. Section 74–514 of that Act, as codified by Georgia, states:

> "The courts of this State shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this Chapter, or which was made under factual circumstances meeting the jurisdictional standards of the Chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this Chapter." Ga. Code § 74–514 (1979).

Interpreting the meaning of this section is obviously a matter of Georgia state law, but a litigant could plausibly refer to it as a statutory full faith and credit requirement. The record supports the view that it was so understood in this case, by both the courts and the parties.

At the trial court hearing, petitioner discussed the Florida decree but did not invoke the Full Faith and Credit Clause of the Federal Constitution. Rather, petitioner argued that in failing to make the Georgia court aware of the previous decree, respondent had violated the terms of the Uniform

Child Custody Jurisdiction Act: "[W]hile all this was going on in Florida, [respondent] turned right around and filed an action here, never informed the [c]ourt here that he had done it; never made any of the disclosures that he's supposed to make under Georgia law [the Uniform Child Custody Jurisdiction Act], and never made any response to that whatsoever." Tr. 8. The appellate briefs of the parties to the Georgia Supreme Court similarly argued the application of the Act to the facts of this case. As noted above, the State Supreme Court apparently did not believe that any federal issue was presented. Finally, petitioner did not claim in her petition for rehearing before the Georgia Supreme Court that the court's failure to reach the federal claim, which petitioner now contends was raised before that court, was error. She did, however, argue that the failure of the Georgia courts to dismiss the action was error under the Act.[4]

We cannot conclude on this record that petitioner raised the federal claim that she now presents to this Court at any point in the state-court proceedings. Thus, we confront in this case the same problem that arose in *Cardinale* v. *Louisiana,* 394 U. S. 437, 438 (1969): "Although certiorari was granted to consider this question, . . . the sole federal ques-

---

[4] Even if, as a matter of federal law, petitioner had properly raised her federal question, we might still confront here an independent state procedural ground barring our consideration of the federal issue. Rule 45 of the Rules of the Georgia Supreme Court states: "Any enumerated error which is not supported by argument or citation of authority shall be deemed abandoned." Ga. Code § 24–4545 (Supp. 1980). The Georgia court has held that failure to include citations of authority to support enumerated errors will bar review of those errors in the State Supreme Court. *Watts* v. *Mitchell,* 227 Ga. 247, 179 S. E. 2d 774 (1971). The Georgia Supreme Court failed to discuss or even mention petitioner's full faith and credit claim. Petitioner has not demonstrated that the failure of the Georgia Supreme Court to reach the federal issue was not grounded on an application of this rule. Since we conclude that the federal claim was not properly presented, we need not reach any conclusion about application of this state-court rule.

tion argued here has never been raised, preserved, or passed upon in the state courts below." Citing a long history of cases, we stated there that "[t]he Court has consistently refused to decide federal constitutional issues raised here for the first time on review of state court decisions." *Ibid.* We have had several occasions to repeat this rule since then, *Tacon v. Arizona,* 410 U. S. 351, 352 (1973); *Moore v. Illinois,* 408 U. S. 786, 799 (1972); *Stanley v. Illinois,* 405 U. S. 645, 658, n. 10 (1972); *Hill v. California,* 401 U. S. 797 (1971); *University of California Regents v. Bakke,* 438 U. S. 265, 283 (1978) (opinion of POWELL, J.), and we see no reason to deviate from it now.

It is appropriate to emphasize again, see *Cardinale v. Louisiana, supra,* at 439, that there are powerful policy considerations underlying the statutory requirement and our own rule that the federal challenge to a state statute or other official act be presented first to the state courts. These considerations strongly indicate that we should apply this general principle with sufficient rigor to make reasonably certain that we entertain cases from state courts only where the record clearly shows that the federal issue has been properly raised below.

In the first place, although the States are sovereign entities, they are bound along with their officials, including their judges, by the Constitution and the federal statutory law. Principles of comity in our federal system require that the state courts be afforded the opportunity to perform their duty, which includes responding to attacks on state authority based on the federal law, or, if the litigation is wholly private, construing and applying the applicable federal requirements. As the Court has elsewhere observed, this principal of comity requires

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the

belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger* v. *Harris,* 401 U. S. 37, 44 (1971).

The principal of comity that stands behind the "properly-raised-federal-question" doctrine is similar to the principle that stands behind the exhaustion-of-state-remedies doctrine applicable to federal habeas corpus review of the constitutional claims of state prisoners. We have described the latter doctrine as one based on "federal-state comity," *Picard* v. *Connor,* 404 U. S. 270, 275 (1971), and have described its function as reflecting

> " 'an accommodation of our federal system designed to give the State the initial "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.' We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " *Ibid.* (citations omitted).

There are also very practical reasons for insisting that federal issues be presented first in the state-court system. The requirement affords the parties the opportunity to develop the record necessary for adjudicating the issue. It permits the state courts to exercise their authority, which federal courts, including this one, do not have at least to the same extent, to construe state statutes so as to avoid or obviate federal constitutional challenges such as vagueness and overbreadth. The rule also insures that if there are independent and adequate state grounds that would pretermit the federal issue, they will be identified and acted upon in an authoritative manner. Finally, if the parties to state-court litigation are required to present their federal claims in the state tri-

bunals in the first instance, those issues will be adjudicated in the state courts where necessary to dispose of the case. In most instances, such a judgment will be supported by an opinion that may well obviate any reason for our giving plenary consideration to the case. In terms of our own workload, this is a very substantial matter.

For all of these reasons, we, as well as litigants seeking to bring cases here from the state courts, should take care to comply with the jurisdictional statute and our rules. Although it would avoid uncertainty and the expenditure of much time and effort if litigants identified in the state courts precisely the provisions of the Federal Constitution or the federal statute on which they rely, we have not insisted on such inflexible specificity. The inevitable result is that at times there have been differences of opinion as to whether the state courts have been afforded a fair opportunity to address the federal question that is sought to be presented here.[5] At the minimum, however, there should be no doubt from the record that a claim under a *federal* statute or the *Federal*. Constitution was presented in the state courts and that those courts were apprised of the nature or substance of the federal claim at the time and in the manner required by the state law. Otherwise, we cannot be sufficiently sure, when the state court whose judgment is being reviewed has not addressed the federal question that is later presented here, that the issue was actually presented and silently resolved by the state court against the petitioner or the appellant in this Court.

Because petitioner failed to raise her federal claim in the state proceedings and the Georgia Supreme Court failed to rule on a federal issue, we conclude that we are without

---

[5] See, e. g., *Wood* v. *Georgia*, 450 U. S. 261 (1981); *Vachon* v. *New Hampshire*, 414 U. S. 478 (1974); *Boynton* v. *Virginia*, 364 U. S. 454 (1960); *Bryant* v. *Zimmerman*, 278 U. S. 63 (1928).

jurisdiction in this case. Accordingly, the writ is dismissed for want of jurisdiction.

*So ordered.*

JUSTICE POWELL, with whom JUSTICE BRENNAN joins, concurring.

I agree that the writ should be dismissed because petitioner did not raise her federal constitutional challenge in the Georgia courts. I join the Court's opinion with the understanding, however, that the broad statements in it are not to be taken as departing from the rule, reaffirmed just this Term, that the Court has jurisdiction to review plain error unchallenged in the state court when necessary to prevent fundamental unfairness. *Wood* v. *Georgia,* 450 U. S. 261, 265, n. 5 (1981). See also, *Vachon* v. *New Hampshire,* 414 U. S. 478 (1974) (finding plain error in an appeal from a state court).

JUSTICE MARSHALL, dissenting in part.

I share the Court's concerns for comity and for careful pleadings. Nonetheless, I do not believe that either of these concerns justifies the Court's apparent conclusion that a petitioner who fails to cite the exact location of a federal constitutional provision has neglected to raise a claim on that ground.

The Court attempts to reason that the petitioner neglected to raise any claim under the Full Faith and Credit Clause of the Constitution. As the Court acknowledges, however, petitioner "did use the phrase 'full faith and credit' at several points in the proceedings below." *Ante,* at 496. Indeed, she asserted in her amended complaint that the decision of the Florida court "should be accorded full faith and credit" by the Georgia court, and reiterated this claim in her enumeration of errors to the Georgia Supreme Court. The Court tries to translate these words as references not to the identical language in the Federal Constitution, but instead to a

provision of Georgia law which fails to mention any of the three words, "full," "faith," or "credit." See Ga. Code § 74–514 (1979), Uniform Child Custody Jurisdiction Act. The Georgia provision governs allocation of jurisdiction under the Uniform Child Custody Jurisdiction Act, which both Georgia and Florida have enacted as their own law. I fail to see how the interests of improved pleadings or comity are served by the Court's strained refusal to ascribe to petitioner's words their plain meaning.

It remains true that the Georgia Supreme Court neglected to pass on the import of the federal Full Faith and Credit Clause for this case. I would remand for such state review on that issue, rather than dismiss the writ and leave the decision below in place.