# BANKERS LIFE & CASUALTY CO. *v.* CRENSHAW

No. 85–1765.   Argued November 30, 1987—Decided May 16, 1988

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, J., joined, in all but Part II of which WHITE, J., joined, in all but Part II and n. 1 of which O'CONNOR and SCALIA, JJ., joined, and in all but Part III of which BLACKMUN, J., joined. WHITE, J., filed an opinion concurring in part, in which SCALIA, J., joined, *post*, p. 85. O'CONNOR, J., filed an opinion concurring in part and concurring in the judgment, in which SCALIA, J., joined, *post*, p. 86. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 89. BLACKMUN, J., filed an opinion concurring in part and dissenting in part, *post*, p. 89. STEVENS and KENNEDY, JJ., took no part in the consideration or decision of the case.

*Theodore B. Olson* argued the cause for appellant. With him on the briefs were *Larry L. Simms* and *Terence P. Ross.*

*Bruce J. Ennis, Jr.,* argued the cause for appellee. With him on the brief were *Paul R. Friedman, Ernest R. Schroeder,* and *Vincent J. Castigliola, Jr.* *

---

*Briefs of *amici curiae* urging reversal were filed for the Alliance of American Insurers et al. by *Ellis J. Horvitz* and *S. Thomas Todd;* for the

. JUSTICE MARSHALL delivered the opinion of the Court.

In this case we must decide whether a Mississippi statute imposing a 15% penalty on parties who appeal unsuccessfully from a money judgment violates the Equal Protection Clause.

I

This action grows out of allegations that appellant Bankers Life and Casualty Company refused in bad faith to pay appellee Lloyd Crenshaw's insurance claim for loss of a limb. According to testimony at trial, appellee was injured on January 6, 1979, when a car alternator he was repairing rolled off his workbench and landed on his foot. Three days later, after the injury had not responded to home treatment, appellee went to the emergency room of the local Air Force base hospital. Hospital doctors prescribed a splint, crutches, and pain medication, and told appellee to return in a week. Appellee revisited the hospital three times over the next five days, each time complaining of continuing pain in his foot. By the last visit, appellee's foot had swollen and begun to turn blue, and the examining doctor recommended a surgery consultation. Appellee was admitted to the hospital, where,

American Council of Life Insurance et al. by *Erwin N. Griswold, Jack H. Blaine,* and *Phillip E. Stano;* and for Johnson & Higgins by *John Calvin Jeffries, Jr., George Clemon Freeman, Jr.,* and *William F. Kennedy.*

Briefs of *amici curiae* urging affirmance were filed for the Association of Trial Lawyers of America by *Jeffrey Robert White* and *Robert L. Habush;* for the Consumers Union of the U. S. et al. by *Andrew F. Popper;* for the Insurance Consumer Action Network by *Marian Haycock Tully;* for the Mississippi Trial Lawyers Association by *Paul S. Minor;* and for the National Insurance Consumer Organization.

Briefs of *amici curiae* were filed for the State of Mississippi by *Edwin Lloyd Pittman,* Attorney General, and *Robert L. Gibbs,* Assistant Attorney General; for Aetna Life Insurance Co. et al. by *George C. Montgomery, Darrell S. Richey,* and *Thomas J. Norman;* for the Arizona Trial Lawyers Association et al. by *G. David Gage* and *Amy Langerman;* and for CBS Inc. et al. by *P. Cameron DeVore, Marshall J. Nelson, Douglas P. Jacobs, Lawrence Gunnels, Boisfeuillet Jones, Bruce W. Sanford, Harvey L. Lipton,* and *Diana M. Daniels.*

on January 17, an Air Force general surgeon determined that a surgical amputation was necessary. The following day, appellee's leg was amputated below the knee.

At the time of the amputation, appellee was insured under a group policy issued by appellant. The policy provided a $20,000 benefit for loss of limb due to accidental bodily injury. In April 1979, appellee submitted a claim under the policy. Appellant denied the claim. The apparent basis for the denial was an opinion of appellant's Medical Director, Dr. Nathaniel McParland, that the cause of the amputation was not appellee's accident but a pre-existing condition of arteriosclerosis, a degenerative vascular disease. Appellee responded to the company's denial by furnishing a statement signed by three doctors who treated him at the hospital. They stated that appellee's arteriosclerosis was " 'an underlying condition and not the immediate cause of the gangrenous necrosis. The precipating [sic] event must be considered to be the trauma which initially brought him to the Emergency Room on 9 January.'" 483 So. 2d 254, 261 (Miss. 1985). Dr. McParland and a company analyst concluded that this statement was inconsequential, and appellant adhered to its position that the arteriosclerosis was responsible for the loss of limb.

Appellee persisted in his efforts to recover under the policy, eventually hiring an attorney, and appellant persisted in its intransigence. In its correspondence with appellee and his attorney, appellant repeatedly asserted that appellee had not suffered an injury as defined in the policy, that is, a " 'bodily injury, causing the loss while this policy is in force, directly and independently of all other causes and effected solely through an accidental bodily injury to the insured person.'" *Id.*, at 262, quoting letter of Apr. 8, 1980, from Wm. Herzau to appellee. In contemporaneous internal memoranda, however, appellant noted that notwithstanding the policy language, appellee was entitled to recovery under Mississippi law if his injury had " " "aggravate[d], render[ed]

active, or set in motion a latent or dormant pre-existing physical condition or disease."'" *Id.*, at 262, 263. The memoranda also demonstrated that appellant knew its files were incomplete yet never attempted to obtain appellee's medical records, most notably his emergency room report, even though Mississippi law and internal company procedures required such efforts.

After appellant again denied the claim on the ground that there was no evidence that appellee's "'injury caused this loss "directly and independently of all other causes,"'" see *id.*, at 263, appellee brought this suit in Mississippi state court. His complaint requested $20,000 in actual damages, and, as amended, $1,635,000 in punitive damages for the tort of bad-faith refusal to pay an insurance claim. The jury awarded appellee the $20,000 provided by the policy and punitive damages of $1.6 million.

The Mississippi Supreme Court affirmed the jury verdict without modification. It concluded that the punitive damages award was not excessive in light of appellant's financial worth and the degree of its wrongdoing. See *id.*, at 279. Because the money judgment was affirmed without modification, a penalty of $243,000, or 15% of the judgment, was assessed against appellant and added to appellee's recovery in accordance with Mississippi's penalty statute. See Miss. Code Ann. § 11–3–23 (Supp. 1987). `In its appeal to the Mississippi Supreme Court, appellant did not raise a federal constitutional challenge to the size of the punitive damages award.[1] Following the affirmance of the jury verdict, appellant filed a petition for rehearing. Appellant argued in the petition that "[t]he punitive damage verdict was clearly ex-

---

[1] Appellant did offer on appeal a federal due process challenge based on the alleged "chilling effect" of unrestricted punitive damages awards on the exercise of a litigant's right of access to the courts. See App. to Juris. Statement 135a. We read this attack on the alleged open-endedness of Mississippi's punitive damages awards to be distinct from the attack on the size of the particular award that appellant has waged before this Court.

cessive, not reasonably related to any legitimate purpose, constitutes excessive fine, and violates constitutional principles." App. to Juris. Statement 139a. An accompanying brief asserted that the punitive damages award violated "due process, equal protection, and other constitutional standards." *Id.*, at 151a. Appellant also filed a Motion to Correct Judgment in which it alleged that the 15% penalty under § 11–3–23 "violat[ed] the rights of equal protection and due process of Bankers Life" guaranteed in the Federal and State Constitutions. App. to Juris. Statement 106a–107a. The Mississippi Supreme Court, without opinion, denied the petition for rehearing and overruled the Motion to Correct Judgment.

## II

Appellant focuses most of its efforts in this appeal to challenging the punitive damages award of $1.6 million. It contends foremost that the award violates the Eighth Amendment's guarantee that "excessive fines [shall not be] imposed." Appellant argues first, that the Excessive Fines Clause applies to punitive damages awards rendered in civil cases, and second, that the particular award in this case was constitutionally excessive. In addition to its excessive fines claim, appellant challenges the punitive damages award in this case on the grounds that it violates the Due Process Clause and the Contract Clause. Although we noted probable jurisdiction as to all of the questions presented in appellant's jurisdictional statement, appellant's challenges to the size of the punitive damages award do not fall within our appellate jurisdiction. See 28 U. S. C. § 1257(2). We therefore treat them as if contained in a petition for a writ of certiorari, and our unrestricted notation of probable jurisdiction of the appeal is to be understood as a grant of the writ as to these claims. See *Mishkin* v. *New York*, 383 U. S. 502, 512 (1966). We conclude, however, that these claims were not raised and passed upon in state court, and we decline to reach them here. See *ibid.* ("The issue thus remains within our

certiorari jurisdiction, and we may, for good reason, even at this stage, decline to decide the merits of the issue, much as we would dismiss a writ of certiorari as improvidently granted").

Appellant maintains that it raised its various challenges to the size of the punitive damages award in its petition for rehearing before the Mississippi Supreme Court. In urging us to entertain the claims, appellant relies on our decision in *Hathorn* v. *Lovorn*, 457 U. S. 255, 262–265 (1982), in which we accepted certiorari jurisdiction of claims that were raised, but not passed upon, in the Mississippi Supreme Court on petition for rehearing. *Hathorn* would be apposite were we to conclude that appellant had adequately raised its claims on rehearing. But appellant's petition for rehearing alleged only that the punitive damages award "was clearly excessive, not reasonably related to any legitimate purpose, constitutes excessive fine, and violates constitutional principles." App. to Juris. Statement 139a. The vague appeal to constitutional principles does not preserve appellant's Contract Clause or due process claims. A party may not preserve a constitutional challenge by generally invoking the Constitution in state court and awaiting review in this Court to specify the constitutional provision it is relying upon. Cf. *Taylor* v. *Illinois*, 484 U. S. 400, 407, n. 9 (1988) ("A generic reference to the Fourteenth Amendment is not sufficient to preserve a constitutional claim based on an unidentified provision of the Bill of Rights . . .").

Appellant's reference to the excessiveness of the punitive damages award more colorably raises a cognizable constitutional challenge to the size of the award, one based on the Excessive Fines Clause of the Eighth Amendment. But this language as well is too oblique to allow us to conclude that appellant raised before the Mississippi Supreme Court the federal claim it now urges us to resolve. As this Court stated in *Webb* v. *Webb*, 451 U. S. 493, 501 (1981), "[a]t the minimum . . . there should be no doubt from the record that a

claim under a *federal* statute or the *Federal* Constitution was presented in the state courts and that those courts were apprised of the nature or substance of the federal claim at the time and in the manner required by the state law." Although the petition for rehearing alleges that the fine is excessive, it does not indicate that the fine is excessive as a constitutional matter, be it state or federal. It certainly does not identify the Excessive Fines Clause of the Eighth Amendment to the Federal Constitution as the source of appellant's claim. Indeed, the crucial language from appellant's petition contains no reference whatsoever to the Eighth Amendment, the Federal Constitution, or federal law. This failure to invoke the Federal Constitution is especially problematic in this case because the Mississippi Constitution contains its own Excessive Fines Clause. Miss. Const., Art. 3, § 28. Thus, even if the Mississippi Supreme Court understood appellant to be offering a constitutional challenge, it may very well have taken that challenge to be anchored in the State Constitution. Cf. *Webb*, 451 U. S., at 496–498 (finding that party's reference to "full faith and credit" in state-court proceedings had failed to raise a federal constitutional claim even though the State Constitution contained no full faith and credit clause); *id.*, at 502–503 (MARSHALL, J., dissenting). We therefore conclude that appellant's Eighth Amendment challenge, like its other challenges to the size of the punitive damages award, was not properly raised below.[2]

---

[2] Similarly, appellant's challenges in this Court to the size of the punitive damages award in no way qualify as "mere enlargements" of claims made before the Mississippi Supreme Court. Under the mere enlargement doctrine, "[p]arties are not confined here to the same arguments which were advanced in the courts below upon a Federal question there discussed." *Dewey* v. *Des Moines*, 173 U. S. 193, 198 (1899). See also *Stanley* v. *Illinois*, 405 U. S. 645, 658, n. 10 (1972). *Dewey* makes clear, however, that the federal question must be brought to the attention of the court below in some manner. "A claim or right which has never been

Whether appellant's failure to raise these claims in the Mississippi courts deprives us of all power to review them under our certiorari jurisdiction is an unsettled question. As then JUSTICE REHNQUIST wrote for the Court in *Illinois* v. *Gates*, 462 U. S. 213 (1983), the cases have been somewhat inconsistent in their characterization of the "not pressed or passed upon below" rule. Early opinions seemed to treat the requirement as jurisdictional, whereas more recent cases clearly view the rule as merely a prudential restriction that does not pose an insuperable bar to our review. See *id.*, at 218–219 (discussing cases). We are not called on today to conclusively characterize the "not pressed or passed upon below" rule, however, because assuming that the rule is merely prudential, we believe that the more prudent course in this case is to decline to review appellant's claims.

In determining whether to exercise jurisdiction over questions not properly raised below, the Court has focused on the policies that animate the "not pressed or passed upon below" rule. These policies are first, comity to the States, and second, a constellation of practical considerations, chief among which is our own need for a properly developed record on appeal. See *Webb* v. *Webb*, *supra*, at 500–501. Because the chief issue appellant would have us resolve—whether the Eighth Amendment's Excessive Fines Clause serves to limit punitive damages in state civil cases—is a question of some moment and difficulty, these policies apply with special force. See *Illinois* v. *Gates*, *supra*, at 224 ("Where difficult issues of great public importance are involved, there are strong reasons to adhere scrupulously to the customary limitations on our discretion"); *Mishkin* v. *New York*, 383 U. S., at 512–513 ("The far-reaching and important questions tendered by this claim are not presented by the record with sufficient clarity to require or justify their decision"). Our review of appellant's claim now would short-circuit a number of less intru-

made or asserted cannot be said to have been denied by a judgment which does not refer to it." 173 U. S., at 200.

sive, and possibly more appropriate, resolutions: the Mississippi State Legislature might choose to enact legislation addressing punitive damages awards for bad-faith refusal to pay insurance claims;[3] failing that, the Mississippi state courts may choose to resolve the issue by relying on the State Constitution or on some other adequate and independent non-federal ground; and failing that, the Mississippi Supreme Court will have its opportunity to decide the question of federal law in the first instance, while any ultimate review of the question that we might undertake will gain the benefit of a well-developed record and a reasoned opinion on the merits. We think it unwise to foreclose these possibilities, and therefore decline to address appellant's challenges to the size of the punitive damages award.

## III

There remains appellant's challenge to Mississippi's "penalty statute," which requires unsuccessful appellants from money judgments, as well as from several other categories of judgments whose value may readily be determined, to pay an additional assessment of 15% of the judgment.[4] Appellant

---

[3] Several States have enacted limits on punitive damages in specified types of causes of action. See, e. g., Fla. Stat. Ann. § 713.31(2)(c) (1988) (fraudulent filing of mechanics' lien); Wash. Rev. Code § 9A.36.080 (1987) (malicious harassment); Cal. Civ. Code Ann. § 1787.3 (West 1985) (consumer credit denial).

[4] Section 11-3-23 of Miss. Code Ann. (Supp. 1987) provides:

"In case the judgment or decree of the court below be affirmed, or the appellant fails to prosecute his appeal to effect, the supremé court shall render judgment against the appellant for damages, at the rate of fifteen percent (15%), as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum. If the judgment or decree be for the possession of real or personal property, the damages shall be assessed on the value of the property. If the judgment or decree be for the dissolution of an injunction or other restraining process at law or in chancery, the damages shall be computed on the amount due the appellee which was enjoined or restrained. If the judgment or decree be for the dissolution of an injunction or other restraining process as to certain property,

argues that the penalty statute violates the Equal Protection Clause of the Fourteenth Amendment because it singles out appellants from money judgments, and because it penalizes all such appellants who are unsuccessful, regardless of the merit of their appeal. This claim is properly before us under our appellate jurisdiction because the Mississippi Supreme Court, in denying appellant's Motion to Correct Judgment, upheld the validity of § 11–3–23 against appellant's federal constitutional claim. See 28 U. S. C. § 1257(2).

Under this Court's equal protection jurisprudence, Mississippi's statute is "presumed to be valid and will be sustained if the classification . . . is rationally related to a legitimate state interest." *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U. S. 432, 440 (1985). The state interests assertedly served by the Mississippi statute were detailed by the Mississippi Supreme Court in *Walters* v. *Inexco Oil Co.,* 440 So. 2d 268 (1983). The penalty statute, some version of which has been part of Mississippi law since 1857, "expresses the state's interest in discouraging frivolous appeals. It likewise expresses a bona fide interest in providing a measure of compensation for the successful appellee, compensation for his

---

real or personal, or a certain interest in property, or be a judgment or decree for the sale of property, or some interest in it, to satisfy a sum out of the proceeds of sale, or to enforce or establish a lien or charge or claim upon or some interest in property, and the only matter complained of on the appeal is the decree as to some particular property or claim on it, the damages shall be computed on the value of the property or the interest in it, if the value of the property or interest in it be less than the judgment or decree against it; but if the value of the property or interest in it be greater than the amount of the judgment or decree against it, the damages shall be upon the amount of the judgment or decree; provided, however, the above penalty shall not be assessed against any condemnee appealing from a special court of eminent domain in any circumstances."

The penalty would appear to apply to both defendant-appellants, such as Bankers Life, and plaintiff-appellants, who might choose to challenge a recovery they view as too meager. See *Eagle Lumber & Supply Co.* v. *Robertson,* 161 Miss. 17, 135 So. 499 (1931) (applying former Mississippi penalty statute to unsuccessful plaintiff-appellant).

having endured the slings and arrows of successful appellate litigation." *Id.*, at 274–275. In a similar vein, the statute protects the integrity of judgments by discouraging appellant-defendants from prolonging the litigation merely to "squeeze a favorable settlement out of an impecunious" appellee. *Id.*, at 275. Also, the penalty statute "tells the litigants that the trial itself is a momentous event, the centerpiece of the litigation, not just a first step weighing station en route to endless rehearings and reconsiderations." *Ibid.* Finally, in part because it serves these other goals, the penalty statute furthers the State's interest in conserving judicial resources. *Ibid.*

The legitimacy of these state interests cannot seriously be doubted, and this Court has upheld statutes that serve similar interests. See, *e. g.*, *Life & Casualty Ins. Co.* v. *McCray*, 291 U. S. 566 (1934) (upholding additional assessment on insurance companies that wrongfully refuse to pay policy benefits); see also, *Louisville & Nashville R. Co.* v. *Stewart*, 241 U. S. 261, 263 (1916) (State may make appeal "costly in cases where ultimately the judgment is upheld") (Holmes, J.). Cf. *Lindsey* v. *Normet*, 405 U. S. 56, 78 (1972) ("We do not question here reasonable procedural provisions to safeguard litigated property . . . or to discourage patently insubstantial appeals") (citation omitted). The statute therefore offends the Equal Protection Clause only if the legislative means that Mississippi has chosen are not rationally related to these legitimate interests.

In arguing that § 11–3–23 violates equal protection, appellant seeks to draw support from the Court's opinion in *Lindsey* v. *Normet, supra*. *Lindsey* addressed the constitutionality of an Oregon statute that required tenants challenging eviction proceedings to post a bond of twice the amount of rent expected to accrue pending appellate review. The bond was forfeited to the landlord if the lower court decision was affirmed. We agreed with the appellants that the double-

bond requirement violated the Equal Protection Clause.[5] We noted that the requirement was "unrelated to actual rent accrued or to specific damage sustained by the landlord." 405 U. S., at 77. Moreover, the requirement, which burdened only tenants, including tenants whose appeals were nonfrivolous, erected "a substantial barrier to appeal faced by no other civil litigant in Oregon." *Id.*, at 79. We therefore concluded that the requirement bore "no reasonable relationship to any valid state objective" and that it discriminated against the class of tenants appealing from adverse decisions in wrongful-detainer actions in an "arbitrary and irrational" fashion. *Id.*, at 76–77, 79.

As *Lindsey* demonstrates, arbitrary and irrational discrimination violates the Equal Protection Clause under even our most deferential standard of review. Unlike the statute in *Lindsey*, however, Mississippi's penalty statute does not single out a class of appellants in an arbitrary and irrational fashion. First, whereas the statute in *Lindsey* singled out the narrow class of defendant-tenants for discriminatory treatment, the sweep of § 11–3–23 is far broader: the penalty applies both to plaintiffs and defendants, and it also applies to all money judgments as well as to a long list of judgments whose money value may readily be determined. See n. 6, *infra.* Second, and more generally, there is a rational connection between the statute's objective and Mississippi's choice to impose a penalty only on appellants from money judgments or judgments the money value of which can readily be determined. If Mississippi wanted similarly to deter frivolous appeals from other kinds of judgments, it either would have to erect a fixed bond that bore no relation to the value of the underlying suit, or else it would have to

---

[5] The appellants in *Lindsey* also attacked the constitutionality of provisions of the statute that required tenants challenging eviction proceedings to proceed to trial within six months and to bring only certain claims and defenses. The Court upheld these provisions against appellants' facial challenge. *Lindsey* v. *Normet*, 405 U. S., at 64–69.

set appropriate penalties in each case using some kind of individualized procedure, which would impose a considerable cost in judicial resources, exactly what the statute aims to avoid. Mississippi instead has chosen a partial solution that will deter many, though not all, frivolous appeals without requiring a significant commitment of governmental resources. Appellants from money judgments, and from the other types of judgments delineated in the statute, are a rational target of this scheme because the value of their claims, and thus of a proportional penalty, may be readily computed without substantial judicial intervention.  Cf. *Lindsey, supra,* at 78 ("We discern nothing in the special purposes of the [wrongful detainer] statute or in the special characteristics of the landlord-tenant relationship to warrant this discrimination"). The Constitution does not prohibit Mississippi from singling out a group of litigants that it rationally concludes is most likely to be deterred from bringing meritless claims at the least cost to the State.

In addition, Mississippi's statute is less likely than was the statute in *Lindsey* to discourage substantial appeals along with insubstantial ones.  Because the penalty operates only after a judgment has been affirmed without modification, there is less risk than in *Lindsey* of discouraging appellants who believe they have meritorious appeals but simply lack the funds to post a substantial bond during the appellate process.[6]  And whereas the assessment in *Lindsey* "automatically doubled the stakes," 405 U. S. at 79, the 15% penalty here is a relatively modest additional assessment.   Cf.

---

[6] Appellant argues that § 11–3–23 impermissibly burdens some litigants' access to the State's appellate system.  Although the Court indicated in *Lindsey* that the effective foreclosure of a state right to appeal as to some litigants only—for example, indigent litigants—might well violate equal protection guarantees under even deferential scrutiny, see *Lindsey, supra,* at 77, 79, appellee rightly notes that appellant lacks standing to challenge § 11–3–23 on this basis, because appellant has not alleged that its own right to appeal has been foreclosed by the statute.  See *Broadrick* v. *Oklahoma,* 413 U. S. 601, 610 (1973).

*McCray*, 291 U. S., at 571 (12% additional assessment not oppressive). Although Mississippi may not have succeeded in eliminating all danger of deterring meritorious claims, we cannot say that the residual danger is sufficient to render the statutory scheme irrational.

In short, unlike the double-bond provision condemned in *Lindsey*, the means chosen in § 11–3–23 are reasonably related to the achievement of the State's objectives of discouraging frivolous appeals, compensating appellees for the intangible costs of litigation, and conserving judicial resources. See *Lindsey*, 405 U. S., at 70. It of course is possible that Mississippi might have enacted a statute that more precisely serves these goals and these goals only; as we frequently have explained, however, a state statute need not be so perfectly calibrated in order to pass muster under the rational-basis test. See, *e. g., Vance* v. *Bradley*, 440 U. S. 93, 108 (1979). We are satisfied that the means that the State has chosen are "reasonably tailored to achieve [the State's legitimate] ends." *Lindsey, supra*, at 78. We therefore affirm the judgment of the Mississippi Supreme Court denying appellant's equal protection challenge to § 11–3–23.

*It is so ordered.*

JUSTICE STEVENS and JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE WHITE, with whom JUSTICE SCALIA joins, concurring in part.

I join Parts I and III of the Court's opinion but not Part II. I continue to believe that "the statute which gives us jurisdiction in this cause, 28 U. S. C. § 1257(3), prevents us from deciding federal constitutional claims raised here for the first time on review of state-court decisions. *Cardinale* v. *Louisiana*, 394 U. S. 437, 438–439 (1969)." *Illinois* v. *Gates*, 462 U. S. 213, 247 (1983) (WHITE, J., concurring in judgment). Thus, I disagree with the Court's analysis—under "pruden-

tial" standards — of appellant's preservation of its challenge to the punitive damages award here. *Ante*, at 79–80. Ultimately, because the majority properly declines to address claims which I believe are not within this Court's jurisdiction, I concur in Part II's result, but not its reasoning.

JUSTICE O'CONNOR, with whom JUSTICE SCALIA joins, concurring in part and concurring in the judgment.

I do not agree with the Court's analysis of our jurisdiction over appellant's federal due process claim. I therefore do not join Part II or footnote 1 of the Court's opinion. I join the remainder of the opinion, and I agree with the analysis of Part II insofar as claims under the Excessive Fines Clause and Contract Clause are concerned. Moreover, for the reasons given below, I ultimately concur in the Court's judgment with respect to the due process claim as well.

In its brief on appeal to the Mississippi Supreme Court, appellant expressly invoked the Due Process Clause of the Fourteenth Amendment and argued that Mississippi law chilled its fundamental right of access to the courts by authorizing unlimited punitive damages. App. to Juris. Statement 135a. The Court does not acknowledge this argument in its discussion of why the due process claim was not raised and passed upon below, but only notes that appellant did not present a due process argument clearly in its petition for rehearing. *Ante*, at 77. The Court suggests that it need not consider the due process argument raised in appellant's brief to the Mississippi Supreme Court because it is "distinct from the attack on the size of the particular award that appellant has waged before this Court." *Ante*, at 75, n. 1. Standing alone, this observation is insufficient to deprive this Court of jurisdiction over appellant's due process claim. "Parties are not confined here to the same arguments which were advanced in the courts below upon a Federal question there discussed." *Dewey* v. *Des Moines*, 173 U. S. 193, 197–198 (1899). See *Illinois* v. *Gates*, 462 U. S. 213, 248 (1983) (WHITE, J., concurring in judgment).

Accordingly, the Court should examine the federal due process argument that appellant makes in this Court to determine whether it is "only an enlargement" of the due process argument it raised below. See *Dewey, supra,* at 197. In its principal brief in this Court, appellant contends that the Mississippi Supreme Court changed its standard for judging when an insurer may be liable for punitive damages and applied the new standard retroactively to this case. Appellant explains that it therefore had no advance notice of what conduct could render it liable for punitive damages. Citing cases in which this Court has struck down criminal statutes as void for vagueness, *e. g., Roberts* v. *United States Jaycees,* 468 U. S. 609 (1984); *Giaccio* v. *Pennsylvania,* 382 U. S. 399 (1966), appellant maintains that this violated the Due Process Clause. Brief for Appellant 40–43. Then, in a supplemental brief filed after argument with the Court's leave, appellant expands the due process argument pressed below and mounts a more general attack on permitting juries to impose unlimited punitive damages on an ad hoc basis. Postargument Brief for Appellant 4–10.

Appellant has touched on a due process issue that I think is worthy of the Court's attention in an appropriate case. Mississippi law gives juries discretion to award any amount of punitive damages in any tort case in which a defendant acts with a certain mental state. In my view, because of the punitive character of such awards, there is reason to think that this may violate the Due Process Clause.

Punitive damages are awarded not to compensate for injury but, rather, "to punish reprehensible conduct and to deter its future occurrence." *Gertz* v. *Welch, Inc.,* 418 U. S. 323, 350 (1974). Punitive damages are not measured against actual injury, so there is no objective standard that limits their amount. Hence, "the impact of these windfall recoveries is unpredictable and potentially substantial." *Electrical Workers* v. *Foust,* 442 U. S. 42, 50 (1979). For these reasons, the Court has forbidden the award of punitive damages

in defamation suits brought by private plaintiffs, *Gertz, supra*, at 349–350, and in unfair representation suits brought against unions under the Railway Labor Act, *Electrical Workers, supra*, at 52. For similar reasons, the Court should scrutinize carefully the procedures under which punitive damages are awarded in civil lawsuits.

Under Mississippi law, the jury may award punitive damages for any common law tort committed with a certain mental state, that is, "for a willful and intentional wrong, or for such gross negligence and reckless negligence as is equivalent to such a wrong." 483 So. 2d 254, 269 (Miss. 1985) (opinion below). Although this standard may describe the required mental state with sufficient precision, the amount of the penalty that may ensue is left completely indeterminate. As the Mississippi Supreme Court said, "the determination of the amount of punitive damages is a matter committed solely to the authority and discretion of the jury." *Id.*, at 278. This grant of wholly standardless discretion to determine the severity of punishment appears inconsistent with due process. The Court has recognized that "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States* v. *Batchelder*, 442 U. S. 114, 123 (1979). Nothing in Mississippi law warned appellant that by committing a tort that caused $20,000 of actual damages, it could expect to incur a $1.6 million punitive damages award.

This due process question, serious as it is, should not be decided today. The argument was not appellant's principal submission to this Court. The analysis in the briefs and the discussion at oral argument were correspondingly abbreviated. Although the Court could assert jurisdiction over the due process question on the theory that the argument made here was a "mere enlargement" of the due process argument raised below, it would not be prudent to do so. Accordingly,

I concur in the Court's judgment on this question and would leave for another day the consideration of these issues.

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join Part I (except for footnote 1) and Part III of the opinion of the Court, and concur in its judgment. As to Part II, I agree with JUSTICE WHITE that the question of our entertaining the issues there discussed should be resolved as a matter of law, and not of discretion, and I therefore join his opinion. The Court having chosen not to follow that course, I agree with JUSTICE O'CONNOR regarding the basis on which our discretion should be exercised concerning the due process claim, and therefore join her opinion.

JUSTICE BLACKMUN, concurring in part and dissenting in part.

I join Parts I and II of the Court's opinion, for I agree that the Court should refrain from addressing appellant's challenge to the punitive damages awarded against it. I also agree with the Court's conclusion that appellant's challenge to Mississippi's "penalty statute," Miss. Code Ann. § 11–3–23 (Supp. 1987), is properly before the Court under its appellate jurisdiction. See 28 U. S. C. § 1257(2). Nonetheless, because I conclude that the statute cannot survive scrutiny under the Equal Protection Clause of the Fourteenth Amendment, I dissent from the Court's conclusion to the contrary.

Section 11–3–23 "'is in the nature of a penalty, or a condition of appeal.'" *Pearce* v. *Ford Motor Co.*, 235 So. 2d 281, 283 (Miss. 1970), quoting *Meek* v. *Alexander*, 137 Miss. 117, 121, 102 So. 69, 70 (1924). Not all unsuccessful appellants, however, are subject to its penalizing effect. The statute imposes lump-sum "damages," calculated at 15% of the value of the underlying judgment, on an appellant who unsuccessfully appeals to the Mississippi Supreme Court a money judg-

ment or possessory action.[1]   Although the penalty applies to both the defendant and the prevailing but unsatisfied plaintiff who unsuccessfully appeals, it does *not* apply to the plaintiff who unsuccessfully appeals an *adverse* judgment or to the unsuccessful cross-appellant.

There can be little doubt that this damages assessment burdens the statutory right of a litigant to appeal a money judgment.   The statute makes it substantially more expensive to exercise the right if the judgment is ultimately affirmed, and it thereby obviously creates a disincentive to appeal.[2]   The Court concludes that "the means chosen in § 11–3–23 are reasonably related to the achievement of the State's objectives of discouraging frivolous appeals, compensating appellees for the intangible costs of litigation, and conserving judicial re-

---

[1] Mississippi does not have an intermediate appellate court.   Appeals are taken directly from the State's 40 trial courts to the Mississippi Supreme Court, which has appellate jurisdiction over all matters originating in any of the trial courts, as well as those coming to the trial courts from numerous administrative agencies.   See Brief for Mississippi Trial Lawyers Assn. as *Amicus Curiae* 4–5, and n. 4.   Thus, "[e]very losing litigant is given an automatic right of appeal" to the Mississippi Supreme Court.   *Walters* v. *Inexco Oil Co.*, 440 So. 2d 268, 275 (Miss. 1983).   That tribunal has observed that this "unfettered automatic right of appeal brings its own evils." *Ibid.*

[2] The Court asserts that the 15% penalty is "a relatively modest additional assessment," *ante*, at 84, when compared to the Oregon double-bond requirement for a defendant tenant, which the Court struck down in *Lindsey* v. *Normet*, 405 U. S. 56 (1972).   This assertion is facile.   Pursuant to § 11–3–23, the Mississippi Supreme Court imposed a mandatory $243,000 penalty against appellant in the instant case; this was in addition to extraordinary punitive damages.   It is difficult to see the modesty in this imposition.

It is true that the Oregon statute at issue in *Lindsey* was more burdensome on the right to appeal in the sense that, by requiring that the bond be posted before an appeal was taken, it effectively foreclosed appeals to indigent defendants.   See 405 U. S., at 79.   But surely a penalty need not *foreclose* an appeal before it is recognized as burdensome.   Cf. *ibid.* (disapproving the Oregon scheme because it raises the stakes of appealing an adverse judgment).

sources." *Ante*, at 85. In my view, the 15% automatic pen-
alty provision is not at all "reasonably related" to any of these
interests.[3] To the contrary, the relationship of the statutory
classification of a money-judgment appellant to the asserted
governmental goals "is so attenuated as to render the distinc-
tion arbitrary [and] irrational." *Cleburne* v. *Cleburne Living
Center, Inc.*, 473 U. S. 432, 446 (1985).

There is no rational relationship between the statute and
the State's asserted desire to compensate a prevailing appel-
lee for "having endured the slings and arrows of successful
appellate litigation," *Walters* v. *Inexco Oil Co.*, 440 So. 2d
268, 274–275 (Miss. 1983), whether the costs of that litigation
are measured in economic or noneconomic terms. There is
no reasonable justification for compensating only plaintiffs
who prevail against an appeal. Defendants who have suc-
cessfully defended in trial court against suits seeking money
damages and who are subjected to appeals that prove un-
successful are similarly burdened by the added emotional
and financial costs of the appellate process. Yet, under the
statute, they receive no "compensation" because the pen-
alty is not imposed on nonprevailing plaintiffs who unsuccess-
fully appeal. The statute arbitrarily discriminates against
defendant-appellants of money judgments, and the State of-
fers no justification for the distinction so drawn.

Not surprisingly, then, the Court makes no attempt to jus-
tify § 11–3–23 based upon the "compensation" objective, de-
spite its reference to that state interest. Instead, it upholds
the penalty statute as reasonably related to Mississippi's in-
terest in discouraging frivolous appeals and thereby protect-
ing the Mississippi Supreme Court "from being required to
spend its time and energy and resources on appeals thought-
lessly taken." *Walters* v. *Inexco Oil Co.*, 440 So. 2d, at 275.
See *ante*, at 81–82. In *Lindsey* v. *Normet*, 405 U. S. 56

---

[3] Because I conclude that § 11–3–23 is not reasonably related to the state
interests advanced in its defense, I need not address whether those inter-
ests are "legitimate" for purposes of equal protection analysis.

(1972), the Court explained that a State might adopt "reasonable procedural provisions . . . to discourage patently insubstantial appeals, if these rules are reasonably tailored to achieve these ends and if they are uniformly and non-discriminatorily applied." *Id.*, at 78. But § 11–3–23 does not meet this standard. The penalty is neither applied in a uniform and nondiscriminatory manner, nor reasonably tailored to discourage "patently insubstantial appeals."

Section 11–3–23 does not permit the Mississippi Supreme Court to determine whether an appeal is frivolous; the 15% penalty is imposed on certain unsuccessful appellants whenever the judgment is affirmed, regardless of the substantial merit of the appellant's case. Thus, even if, as in this very case, a money judgment is affirmed by a narrow 5–4 majority of the Supreme Court, the assessment automatically is made. Such a provision obviously sweeps substantial appeals as well as frivolous appeals within its deterrent net.[4]

The claim that § 11–3–23 operates to screen out frivolous appeals is no more persuasive than was the same claim advanced in *Lindsey* in support of the Oregon double-bond requirement. This Court found the argument "unpersuasive" in *Lindsey* because the Oregon requirement "bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." 405 U. S., at 78. Similarly, § 11–3–23 not only discourages nonfrivolous appeals by those who would avoid the risk of additional damages, but also allows meritless appeals by those who can afford to assume that risk. More strikingly, the statute allows an entirely frivolous appeal by a

---

[4] The unnecessarily broad sweep of § 11–3–23 is illuminated by comparison to Mississippi Supreme Court Rule 38, adopted July 6, 1987, and effective January 1, 1988, which provides for sanctions for the taking of a frivolous appeal in any civil case to which § 11–3–23 does not apply. It clearly reflects Mississippi's recognition that frivolous appeals can be specifically identified, and further demonstrates the irrationality of distinguishing between appeals taken from money judgments and other appeals.

nonprevailing plaintiff without the incursion of *any* risk of an appeal penalty. The Court provides no support for its conclusory assertion that Mississippi rationally concluded that the group of litigants susceptible to the penalty are those "most likely to be deterred from bringing meritless claims." *Ante*, at 84.

At bottom, the majority's reasoning in sustaining Mississippi's mandatory penalty statute amounts to an assessment that § 11–3–23 applies to a larger group of appellants and burdens their right to appeal less heavily than the statute struck down by the Court on equal protection grounds in *Lindsey*. See *ante*, at 83–85. But *Lindsey* is not the benchmark by which we measure the constitutionality of a discriminatory state statute burdening the right to appeal. Each such statute must be justified by reference to the governmental objectives it purportedly seeks to further. Mississippi has failed to demonstrate that § 11–3–23 is rationally related to its stated goals. The discrimination against appellants from money judgments is arbitrary and irrational. Accordingly, the judgment of the Mississippi Supreme Court denying appellant's equal protection challenge to § 11–3–23 should be reversed.

I dissent.