¶ 24. The majority erroneously finds that the claims against Liberty Mutual for bad faith denial of workers' compensation benefits are without merit and must fail because that finding is not supported by *Page 538 
the law or evidence. The majority "skirts around" the fact that on appeal the findings of a circuit court judge, sitting without a jury, will not be overturned unless manifestly wrong and not supported by substantial, credible evidence. Maldonado v. Kelly, 768 So.2d 906, 908 (Miss. 2000);Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983). The circuit court's findings are not manifestly wrong and are supported by substantial, credible evidence. The judgment of the Court of Appeals should be affirmed as it accurately states the law and facts which support a finding that indeed Liberty Mutual did deny workers' compensation benefits to McKneely in bad faith. For these reasons, I dissent.
¶ 25. The majority opines that a bad faith action against a workers' compensation insurer may not lie unless the claimant proves that the injuries for which he was denied benefits were in fact work-related injuries. That determination has already been made in the affirmative, despite the majority's attempt to justify the uncertainty that fibromyalgia is caused by a physical muscle injury. The Workers' Compensation Commission has already determined that such benefits were owing to McKneely, and its findings were never appealed by Liberty Mutual. However, the applicable law regarding bad faith actions is not premised on the proof and procedures required for the attainment of workers' compensation benefits, but rather upon the duty of an "insurance company to promptly and adequately investigate all of the relevant facts involved in an insured's claim" before denying the requested benefits.Szumigala v. Nationwide Mut. Ins. Co., 853 F.2d 274, 280 (5th Cir. 1988). See also Bankers Life Cas. Co. v. Crenshaw, 483 So.3d 254, 276 (Miss. 1985), aff'd on other grounds, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). As stated by the Court of Appeals, "[i]n order for McKneely to meet his burden of proving a bad faith claim he must show that the level of negligence was such that if a proper investigation had been conducted, it would easily reveal evidence that demonstrated that Liberty Mutual's defenses are without merit." Liberty Mut. Ins. Co. v.McKneely, No. 1999-CA-01857-COA, ¶ 16 (Miss.Ct.App. Apr. 17, 2001) (citing Murphree v. Federal Ins. Co., 707 So.2d 523, 531 (Miss. 1997).See also Bankers Life Cas., 483 So.3d at 276. The majority applies the wrong standard and simply finds that McKneely must prove he was eligible for benefits. However, as already stated this was answered in the affirmative by the Workers' Compensation Commission and never was appealed by Liberty Mutual. Thus, such benefits were "improperly" denied. The standard regarding "bad faith" denial of benefits does not address whether the denial was "proper," but rather whether the insurance company conducted a "prompt" and "adequate" investigation before denying benefits.
¶ 26. Looking to the facts presented, not only was McKneely entitled to the benefits as already adjudicated by the Workers' Compensation Commission, but Liberty Mutual failed to conduct any investigation before denying him benefits. It denied benefits after simply looking at the language of one physician's letter and not even the physician treating McKneely's fibromyalgia. Liberty Mutual's entire defense centers around "excerpts" from the letter of Dr. Weatherly to Liberty Mutual regarding the condition and treatment of McKneely. Dr. Weatherly was not even McKneely's treating physician regarding the fibromyalgia. Furthermore, Liberty Mutual fails to account for the full language of the letter which immediately put Liberty Mutual on notice that further investigation was necessary. Liberty Mutual merely suggests that "excerpts" contained in the letter support its denial of *Page 539 
benefits and that, therefore, no further investigation or inquiry was necessary.
¶ 27. The portions of the letter which obviously put Liberty Mutual on notice that further inquiry was needed include the following statements:
 Mr McKneely had been labeled with the diagnosis of fibromyalgia by Dr. Hensarling. Mr. McKneely is to follow up with Dr. Hensarling as I have referred him to Dr. Hensarling. . . . Mr. McKneely will be treated by Dr. Hensarling. . . . Dr. Hensarling is to complete the workup so I will leave this statement for him to answer.
These statements made by Dr. Weatherly were not considered by Liberty Mutual when making its decision to terminate benefits. In fact, Liberty Mutual did not even contact Dr. Hensarling to inquire as to what course of treatment he had prescribed McKneely or what exact diagnosis he had determined. Liberty Mutual did not contact Dr. Hensarling at all. Clearly, the words employed in Dr. Weatherly's letter put Liberty Mutual on notice that further inquiry was necessary. As found by the Court of Appeals, there can be little doubt that Liberty Mutual did not investigate "promptly" or "adequately." Liberty Mut. Ins. Co., ¶ 16.
¶ 28. Both the majority and Liberty Mutual misconstrue the burden of proof required to prove bad faith denial of payment of insurance benefits. Both suggest that Liberty Mutual was not required to "investigate" to the extent of proving McKneely's case for him. The problem with this analysis is that it ignores the applicable standard and burden for bad faith claims. The standard for bad faith claims which requires "prompt and adequate" investigation does not suggest that Liberty Mutual should prove McKneely's workers' compensation case for him. Instead, it requires Liberty Mutual to investigate before denying benefits. This case would be an entirely different story if before denying benefits Liberty Mutual had contacted Dr. Hensarling and made inquiry into his diagnosis, the factual and medical reasoning to support such a diagnosis, and prescribed treatment.
¶ 29. Also misleading is Liberty Mutual and the majority's attempts to characterize the fibromyalgia diagnosis as "conflicting" and "unsubstantiated" in the medical community. Regardless of the medical community's views regarding whether fibromyalgia may be associated with physical work-related injuries, at the time Liberty Mutual denied McKneely benefits there was no "conflicting" medical testimony or evidence. Indeed, the only evidence presented was from Dr. Weatherly's report. Dr. Hensarling's opinions and diagnosis were not even requested for review. There was no conflicting evidence at all — only "excerpts" of Dr. Weatherly's report were relied upon by Liberty Mutual for its denial of benefits. The fact that the medical community may disagree about whether fibromyalgia can be caused and related to physical employment injuries is irrelevant. No such testimony was presented at the time of Liberty Mutual's denial of benefits or at trial. In fact, the only medical evidence presented at trial, besides Dr. Weatherly's and Dr. Hensarling's opinions, was the opinion and diagnosis of Dr. Meyers who concurred with Dr. Hensarling as to the fibromyalgia diagnosis and treatment. Thus, the Fifth Circuit's review in Black v. Food Lion, Inc., 171 F.3d 308 (5th Cir. 1999), of the medical community's split on the diagnosis of fibromyalgia from work-related injuries is not relevant here. That information was not before Liberty Mutual as evidence before its denial of benefits and was not presented at trial. This Court cannot as an afterthought justify Liberty Mutual's actions by "digging *Page 540 
up" dicta concerning the medical community's conflicting opinions about fibromyalgia.
¶ 30. The circuit court judge, sitting without a jury, weighed the facts presented and applied the correct law. His findings should not be overturned. Thus, I would affirm the Court of Appeals' judgment affirming the circuit court's judgment in favor of McKneely. For the above-stated reasons, I dissent.
EASLEY, J., JOINS THIS OPINION.